**ATCHISON, T. & S. F. RY. CO. v. KROW.**

No. 18174.   Opinion Filed Sept. 4, 1928.

(Syllabus.)

1. **Carriers—Shipping Contract Held not to Impose Upon Shipper Duty to Sprinkle Hogs to Keep Down Temperature.**

A clause in a contract for the carriage of hogs that the animals are to be loaded, watered, fed, and cared for by the shipper does not impose upon him the duty of sprinkling them to keep down their temperature.

2. **Appeal and Error—Review—Verdict Reasonably Supported by Evidence.**

In a law action, where there is any competent evidence reasonably tending to support the judgment rendered and based upon the verdict of the jury, the questions of fact will not be reviewed on appeal.

Error from District Court, Pawnee County; Edwin R. McNeill, Judge.

Action by J. T. Krow against the Atchison, Topeka & Santa Fe Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Rainey, Flynn, Green & Anderson, and M. M. Gibbens, for plaintiff in error.

Thurman S. Hurst, for defendant in error.

RILEY, J. This is an appeal from a judgment based upon an action for negligence in the handling of a shipment of hogs. Two acts of negligence are asserted, viz.: That the hogs were shipped during hot weather and the defendant refused the request of plaintiff that the hogs be showered with water in transit; that the defendant, without knowledge or consent of plaintiff, sent the car of hogs from Emporia to Kansas City on a different train from that on which plaintiff rode for the purpose of caring for the hogs, and in addition that defendant negligently kept the hogs in the car a night longer than necessary, causing five hogs to die and the remainder to shrink in weight to the injury of plaintiff.

There is considerable conflict in the testimony, but the judgment below in favor of plaintiff, under the established rule, makes it necessary to review only evidence of plaintiff.

At Emporia plaintiff, Krow, in the presence of the witness Morris, requested the acting yardmaster to "shower" the hogs, as they were getting hot. The acting yardmaster refused. Mr. Lowery, the acting yardmaster, did not deny the request; he testified he did not remember the conversation.

Mr. Krow testified that his car of hogs was transferred to another train which passed him on the way to Kansas City. He was corroborated by Morris, Beck, and Gentry, while the defendant's records showed that the shipment was carried on the train upon which Krow rode from Emporia to Kansas City. According to the records of defendant, the hogs were unloaded in Kansas City at seven o'clock p. m., August 30th. The plaintiff's evidence was that the hogs were not unloaded until 8 or 9 o'clock a. m., August 31st. There was no conflict in the

evidence as to the damaged condition of the shipment. All the evidence shows that five hogs were dead, the remainder very hot and damaged. Mr. Krow signed a 36-hour release; that is, a consent to 36 hours' confinement for the stock in transit. His evidence was that there was a 38 or 39 hour confinement.

The contract under which the shipment was made provided:

"In case any person shall accompany the live stock in charge of same, he shall take care of, feed and water the live stock while being transported, whether delayed in transit or otherwise."

The appellant contends that the duty to care for and water the hogs rested upon plaintiff by virtue of the contract, and since plaintiff made no effort to drench the animals on his own part at Emporia and made no request upon defendant for facilities and equipment with which to perform the service, he is not entitled to recover.

Such a request may have been futile. The acting yardmaster said: "We haven't got time to water these hogs." The duty imposed upon the shipper to "take care of, feed and water" does not include the duty to shower, but means that the shipper shall furnish the stock with food and water as required for compensation.

10 C. J. 101, states the rule as follows:

"The duty of showering or throwing water over hogs or other animals that become, or are likely to become, overheated during transportation rests on the carrier who has control of the facilities for so doing. * * * This duty, it has been held, is one which cannot be evaded by a custom of the carrier or by a special contract. And, in any event, a contract requiring the shipper to water and feed his animals means no more than that the shipper shall see that the stock is furnished with such food and water as is required for consumption; it does not impose on him the duty of showering the animals to keep down their temperature. All that can be exacted of the shipper accompanying the animals is that he shall keep the employees of the carrier advised as to the condition of the stock, so that they may apply water as necessary; and where the carrier's employees know the state of the weather and the animals in transit are suffering from heat, the shipper is not required to call attention to conditions with which they are acquainted, but may rely on them to discharge their plain duty of showering as the condition of the animals requires."

In 4 R. C. L. 974, the rule is stated:

"Furthermore a clause in a contract for the carriage of live stock that the animals are to be loaded, watered, fed and cared for by the shipper does not impose upon him the duty of sprinkling them to keep down their temperature."

So it was held in Peck v. Chicago G. W. Ry. Co. (Iowa) 115 N. W. 1113, 16 L. R. A. (N. S.) 883; Ill. C. R. Co. v. Adams, 42 Ill. 488, 92 Am. Dec. 85; Wallace v. Lake Shore & M. S. R. Co., 113 Mich. 633, 95 N. W. 750; Hudson v. Northern P. Ry. Co., 92 Iowa, 231, 54 Am. St. Rep. 550, 60 N. W. 608.

The appellant complains that plaintiff was permitted to testify from account sales relative to the weight of the hogs and the market value of the same. This account sales was prepared by the commission company and secured by the plaintiff in Kansas City and upon it settlement was made with the Kansas City Commission Company. The plaintiff testified (C.-M. 61-62) as to the market value of the hogs without reference to the sales account, but after refreshing his memory from the same. We find no reversible error in this.

Objection is made to the testimony of plaintiff with Lowery, the assistant yardmaster of defendant at Emporia. We find no error therein.

Likewise, objection is made to testimony relative to custom followed in drenching live stock on the grounds that the same was not pleaded. In this we find no reversible error.

Error is urged because the trial court refused defendant's requested instructions 2, 3, 4, 5, 9, 10, and 12, and in the giving of instructions 14 and 15. We have reviewed the instructions given and refused, and in the court's action upon the instructions we find no error.

The judgment is affirmed.

MASON, V. C. J., and LESTER, HUNT, and HEFNER, JJ., concur.

Note.—See under (1) 10 C. J. p. 102, §116; annotation 16 L. R. A. (N. S.) 883; 4 R. C. L. p. 974, et seq. (2) 4 C. J. p. 853, §2834; 2 R. C. L. p. 193 et seq.; 1 R. C. L. Supp. p. 443; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 79; 6 R. C. L. Supp. p. 73; 7 R. C. L. Supp. p. 36.